**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CLAY LEE JONES, individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

MOSCOT.COM, LLC,

Defendant.

Case No.: 1:25-cv-1843-JPO

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**STEIN SAKS, PLLC**

*/s/Rami Salim*
Rami Salim, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I.    INTRODUCTION ....................................................................................................... 1

II.   FACTUAL BACKGROUND........................................................................................ 2

III.  STANDARD OF REVIEW.......................................................................................... 3

IV.   LEGAL ARGUMENT ................................................................................................ 4

A.    DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE

PLAINTIFF HAS MET HIS BURDEN TO SHOW THAT HE HAS ARTICLE III

STANDING AND HIS CLAIMS ARE SUCH THAT HE IS ENTITLED TO RELIEF........... 4

  i.    Plaintiff Has Alleged Sufficient Facts Evincing Past Injury. ......................................... 4

  ii.   Plaintiff Has Established Future Injury and His Intent to Return to the Website........... 7

  iii.  The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean

  He Has Not Demonstrated Article III Standing in this Case.................................................... 9

B.    DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE

DEFENDANT HAS FAILED TO MEET ITS "FORMIDABLE BURDEN" TO ESTABLISH

THAT PLAINTIFF'S CLAIMS ARE MOOT......................................................................... 11

V.    CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) ........................................................ 12

*Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131 (E.D.N.Y. 2016) .................................. 3

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) ..................................... 3

*Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) .................. 7, 9, 10, 11

*Campbell v. Greisberger*, 80 F.3d 703 (2d Cir. 1996) .................................................. 13

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ................................................... 12

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ....................................... 3

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94 (2d Cir. 2010) ........................... 13

*Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542
    (S.D.N.Y. July 5, 2023) ............................................................................... 13

*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016) ................. 12

*Diaz v. Kroger Co.,* No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4,
    2019) ....................................................................................................... 14

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017) .......................... 5

*Fernandez v. Katie May, LLC*, No. 24-CV-1592 (VEC), 2025 U.S. Dist. LEXIS 51174 (S.D.N.Y.
    Mar. 20, 2025) ..................................................................................... 1, 6, 14

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) 12

*Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664 (S.D.N.Y. 2014) ................................. 12

*Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 U.S. Dist. LEXIS
    238707 (S.D.N.Y. Dec. 18, 2020) .................................................................. 14

*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104 (2d Cir. 2018) ................................. 4

*Heckler v. Mathews*, 465 U.S. 728 (1984) ................................................................ 5

*Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y.
    May 20, 2021) ............................................................................................ 7

*Jobie O. v. Spitzer*, 2007 U.S. Dist. LEXIS 91460 (S.D.N.Y. Dec. 5, 2007) .............................. 12

*John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017) ................................... 7

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) ....................................... 4

*Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar. 6, 2023).................................................................................................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 3

*Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July 5, 2023)............................................................................................................................... 8, 11

*Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022)................................................................................................................................... 13

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ............................................................................. 3

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................ 3

*Tavarez v. Extract Labs, Inc.*, 2023 U.S. Dist. LEXIS 55615 (S.D.N.Y. Mar. 30, 2023)............ 14

*Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935 (E.D.N.Y. Feb. 24, 2022) .............................................................................................. 4

*Toro v. Medbar Corp.*, No. 23 Civ. 6878 (AS) (JLC), 2024 U.S. Dist. LEXIS 91815 (S.D.N.Y. May 22, 2024) ...................................................................................................................... 13

*Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244 (E.D.N.Y. July 17, 2012).......................................................................................................................................... 5

**Statutes**

U.S. Const., Art. III, § 2................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................................ 3

## I.    INTRODUCTION

Plaintiff Clay Lee Jones, a blind individual who relies on screen-reading software to navigate the internet, brings this action against Defendant Moscot.com, LLC ("Defendant" or "Moscot") under Title III of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"). Plaintiff alleges that Moscot has failed to design and maintain its commercial website in a manner that is accessible to visually impaired consumers, thereby denying him equal access to the goods, services, and information that Moscot offers to the general public.

Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(1), asserting that Plaintiff lacks standing and that his claims are moot. These arguments fail for two principal reasons. First, Plaintiff's Complaint alleges a concrete, particularized, and actual injury that arises from his attempt to use the website and his ongoing interest in returning to complete his intended transaction. As confirmed in a recent case from this District, *Fernandez v. Katie May, LLC*, a plaintiff's inability to access a retailer's website, coupled with a plausible intent to return, is sufficient to establish standing at the pleading stage. No. 24-CV-1592 (VEC), 2025 U.S. Dist. LEXIS 51174 (S.D.N.Y. Mar. 20, 2025). Second, Defendant has not met the "formidable burden" of demonstrating mootness under the voluntary cessation doctrine. As reiterated by courts in this District, a defendant cannot evade judicial review merely by asserting that it has remediated its website—particularly when such assertions are unsupported by binding commitments or permanent fixes.

Defendant's attempt to characterize Plaintiff's claims as "boilerplate" ignores the individualized experiences and specific barriers detailed in the Complaint. As the majority of courts in this circuit have recognized, the ADA's protections extend to digital spaces, and courts

1

must not dismiss legitimate accessibility claims based on unfounded skepticism toward plaintiffs who seek to enforce their statutory rights. Given that Defendant's website is an essential portal to its physical stores, its inaccessibility constitutes a clear violation of the ADA. Accordingly, Defendant's motion should be denied in its entirety, allowing Plaintiff to proceed with his well-pleaded claims.

## II.    FACTUAL BACKGROUND

Plaintiff Clay Jones is a visually impaired and legally blind individual who relies on screen-reading software to access website content. For such software to function properly, website information must be capable of being rendered into text. When website content is not compatible with this format, blind or visually impaired users are effectively barred from accessing the same information available to sighted users.

On or about June 8, 2024, Plaintiff visited www.moscot.com, a commercial website operated by Defendant Moscot.com, LLC. The website allows consumers to browse and purchase eyewear, view product information, and locate Moscot's physical retail locations. Plaintiff intended to purchase a pair of sunglasses. However, he encountered multiple access barriers that rendered the website inaccessible with his screen-reader software. These barriers included unlabeled buttons, inaccessible image links, and functionality that could only be operated by a mouse, thus excluding blind users who rely on keyboard navigation.

Plaintiff was unable to complete his intended transaction due to these barriers. As a result, he experienced frustration and unequal treatment in his effort to access Defendant's goods and services. Plaintiff remains interested in returning to the website once it is accessible, both to complete his original intended purchase and to explore additional offerings available from Defendant. Plaintiff brings this suit not only to redress the harm he has experienced but also to

secure injunctive relief that will ensure equal access to the website for all blind and visually impaired consumers.

Defendant now moves to dismiss the Complaint, contending that Plaintiff lacks Article III standing and that any claim is rendered moot by supposed accessibility enhancements made after the lawsuit was filed. These contentions are both factually and legally flawed and must be rejected at this early stage of the litigation.

### III.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert in a motion to dismiss that a plaintiff lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing. U.S. Const., Art. III, § 2; *Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016). To assert federal subject-matter jurisdiction, a party must have Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).  The United States Supreme Court has established that standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). When a plaintiff seeks injunctive relief, he must also prove that the identified injury in fact presents a "real and immediate threat of future injury" often termed a "likelihood of future harm." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

"In reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance

with the Act." *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *25 (S.D.N.Y. Dec. 4, 2019). The threshold for Constitutional standing is appreciably lower on a 12(b)(1) motion than it is, for example, on a motion under 12(b)(6). *See Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022) ("Yet, here, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing."); *see also Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action.").

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the [public accommodation]." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). These are what are now known as the *Kreisler* factors. "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021) (citing cases).

## IV.   LEGAL ARGUMENT

### A. DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS MET HIS BURDEN TO SHOW THAT HE HAS ARTICLE III STANDING AND HIS CLAIMS ARE SUCH THAT HE IS ENTITLED TO RELIEF.

#### i.   Plaintiff Has Alleged Sufficient Facts Evincing Past Injury.

Plaintiff has sufficiently alleged past injury, satisfying the first *Kreisler* factor, by detailing multiple instances in which he attempted to access Defendant's website but encountered accessibility barriers that denied him full and equal access. Specifically, Plaintiff's Complaint describes how the website's missing alternative text, hidden elements, improperly formatted lists, unannounced pop-ups, unclear labels for interactive elements, mouse-only functionality, and broken links prevented him from navigating the site and completing a purchase from the Website. These barriers deprived Plaintiff of the ability to enjoy Defendant's website as sighted individuals do, thus establishing a concrete and particularized injury under the ADA.

Defendant's argument that Plaintiff has not suffered an injury ignores the well-established principle that discrimination itself constitutes harm. "If a barrier violating [the ADA] standards relates to a plaintiff's particular disability, it is understood to impair the plaintiff's full and equal access, which constitutes discrimination under the ADA and satisfies the 'injury-in-fact' element." *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017); *see also, Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244, at *6 (E.D.N.Y. July 17, 2012) ("Being subjected to discrimination in violation of [the ADA's] provisions is itself an injury sufficient to confer Article III standing."); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("Discrimination itself, by perpetuating 'archaic and stereotypic' notions or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

Moreover, Plaintiff's Complaint provides detailed allegations describing the specific barriers encountered, how those barriers impacted Plaintiff's ability to complete his purchase, and the resulting deterrence from further attempts to use the website. Courts in this Circuit have

5

consistently held such allegations sufficient to establish past injury. See *Angeles v. Grace Prods. Inc.*, 2021 U.S. Dist. LEXIS 182317, at *4-5 (S.D.N.Y. Sept. 22, 2021) (finding past injury where plaintiff alleged that screen-reading software could not discern website content due to missing descriptions and broken links); *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4, 2019) (holding that allegations of inaccessible navigation tabs and calculators established past injury).

Recently, within this Circuit, in *Fernandez v. Katie May, LLC*, No. 24-CV-1592 (VEC), 2025 U.S. Dist. LEXIS 51174 (S.D.N.Y. Mar. 20, 2025), the Southern District of New York reaffirmed that a blind plaintiff who was unable to access a retailer's website sufficiently alleged a cognizable injury-in-fact for purposes of standing under the ADA. The court in *Katie May* emphasized that the plaintiff's alleged inability to browse and purchase goods through the website, coupled with her intent to return to the website, met the threshold requirement for standing at the pleading stage.

Here, Plaintiff's allegations are substantially similar. Plaintiff, who is legally blind, encountered access barriers on Defendant's website that prevented him from effectively navigating the site and utilizing its services to complete her purchase. Like the plaintiff in *Katie May*, Plaintiff has expressed a clear intent to return to the website once it becomes accessible, establishing the requisite likelihood of future harm necessary to support standing. The court in *Katie May* recognized that a plaintiff need not attempt a purchase or show repeated efforts to access the website to assert an actionable injury; rather, the mere encounter with discriminatory barriers and a plausible intent to return is sufficient. Accordingly, under the reasoning set forth in *Katie May*, Plaintiff has adequately alleged standing to proceed with his ADA claim.

Furthermore, the Second Circuit's "low threshold" for injury-in-fact under Rule 8 further supports denial of the motion. See *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 738 (2d Cir. 2017); *see also, Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4-5 (S.D.N.Y. May 20, 2021) (concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links," were sufficient to survive a motion to dismiss and establish past injury);. Plaintiff's detailed allegations of encountering specific accessibility barriers demonstrate past injury sufficient to survive a Rule 12(b)(1) motion.

### ii.    Plaintiff Has Established Future Injury and His Intent to Return to the Website.

Defendant relies heavily on the Second Circuit's holding in *Calcano v. Swarovski North America Ltd.* to establish that Plaintiff has not sufficiently evinced his intent to return to the Website once the accessibility barriers are remediated. 36 F.4th 68, 76 (2d Cir. 2022). Indeed, prior to *Calcano* and its immediate aftermath, courts consistently found Article III standing based on allegations establishing the basic facts of intent to return. *See Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano*, which "'fail[ed] to provide *any* details about [plaintiffs'] past visits,'" and finding that the amended complaint sufficiently alleged intent to return at the motion to dismiss stage because it "specifies three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of [the product] that he finds attractive."); *see also Sanchez*, 2022 U.S. Dist. LEXIS 51247 at *5 (allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter [the plaintiff] from visiting the Website in the future, and that [the plaintiff] intends to visit the site again in the future when the barriers are cured" sufficient to establish intent to return to the

website where the plaintiff additionally "makes note of his particular interest in pistachio nuts" and websites themselves "are already easily accessible at any moment."); *Angeles*, 2021 U.S. Dist. LEXIS 182317 at *5 (intent to return established where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies and is interested in Defendant's products because they are free of chemicals and other unnatural ingredients.").

Courts in this jurisdiction continue to find standing where the allegations, although perhaps not novel-length, nevertheless establish the factual basis for the plaintiff's interest in the website. *See Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7 (S.D.N.Y. Mar. 6, 2023) (finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt … where Defendant is an apparel retailer and where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (distinguishing *Calcano* and finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (distinguishing *Calcano* and finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023) (finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a

specific oil, the Morroccan Oil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

Taken as a whole, Plaintiff's allegations persuasively explain why he is interested in returning to the Website to purchase the pair of glasses that he was unable to purchase. He wanted a high-quality pair of glasses – exactly what Defendant provides via its Website. As the Second Circuit explained in *Calcano*, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the "totality of all relevant facts,"' "the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75 (citations omitted). Thus, the question is not whether particular paragraphs plead the magic words "I intend to return," but whether, taken as a whole, Plaintiff's interest in returning to the Website is a plausible one.

### iii. The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean He Has Not Demonstrated Article III Standing in this Case.

Defendant argues that *Calcano* all but forecloses Plaintiff's claims because, as a serial litigant, Plaintiff does not have any real interest in the websites he has sued, but is only interested in exacting compliance with the ADA. But *Calcano* is easily distinguishable from the facts of this case. In that case, the Second Circuit rejected the plaintiffs' standing because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the court struggled with the veracity of the allegations. *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food."). Coupled with the boilerplate nature of the complaints and

9

the fact that the plaintiffs were serial litigators who had filed hundreds of such complaints, the Circuit Court refused to find standing. *Id.* at 76-77.

Defendant points to no error in the Complaint, or any of the other ADA claims Plaintiff has filed with this firm, that so troubled the Second Circuit. To the extent that such errors exist, they do not go to the heart of Plaintiff's intent to return to these websites, as was the case in *Calcano*. Aside from the boilerplate nature of the Complaint – a daily fact of life for most plaintiff firms, whether they bring personal injury claims or intellectual property claims such as copyright infringement – Defendant has failed to point to any other aspect of *Calcano* that would call into question the veracity of Plaintiff's allegations. Whatever may be said for Plaintiff's status as a serial litigator – asserted on the basis that Plaintiff has filed other ADA claims, the very notion of which seems faintly absurd – none of the other troubling aspects of *Calcano* are present here.

Courts in this jurisdiction have recognized these distinctions in finding standing. *See Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (rejecting the defendant's reliance on *Calcano* "as the plaintiffs 'offered only "naked assertions"' of intent to return to [d]efendants' stores if they offer braille gift cards," whereas, "[h]ere, the allegations concerning intent to return are significantly more detailed[.]"); *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants."). *Calcano* does not stand for the broader, completely untethered proposition that any ADA complaint, no matter the allegations or the detail provided, must be summarily dismissed if it is contemporaneous with other ADA complaints of a similar nature or based on a similarly-worded complaint. As the Second Circuit noted, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if,

10

'examined under the "totality of all relevant facts,'" the plaintiff *plausibly* alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75 (emphasis added). Considering the totality of facts alleged in the Complaint, Plaintiff has met that burden here.

Simply put, Defendant's reliance on Plaintiff's status as a "serial litigator" is not persuasive. The fact that singular plaintiffs file dozens of these complaints reflects the widespread discrimination that the visually-impaired face on a daily basis and the ubiquitous nature of the internet itself. *See Maddy*, 2023 U.S. Dist. LEXIS 115503 at \*15-16 (rejecting the defendant's arguments that filing over 70 complaints made the plaintiff's allegations of intent to return implausible and reasoning, "It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, 2023 U.S. Dist. LEXIS 115542 at \*10-11 ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites."). Defendant's attempts to twist this basic reality into something other than what it is reflects a profound ignorance of the access barriers that the visually impaired encounter on a daily basis.

**B. DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEFENDANT HAS FAILED TO MEET ITS "FORMIDABLE BURDEN" TO ESTABLISH THAT PLAINTIFF'S CLAIMS ARE MOOT.**

Defendant argues that the Court should dismiss his claims because the Website has been, and is, ADA-compliant. However, "[a] defendant's voluntary compliance with the statute" renders a claim moot only "if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 U.S. Dist. LEXIS 238707, at *4 (S.D.N.Y. Dec. 18, 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (observing that mootness occurs "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot") (internal quotation marks and citations omitted).

Furthermore, the voluntary cessation doctrine "recognizes [] that 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'" *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 669 (S.D.N.Y. 2014) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013)). "'Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (quoting *Already, LLC*, 133 S. Ct. at 727); *see also Jobie O. v. Spitzer*, 2007 U.S. Dist. LEXIS 91460, at *13 (S.D.N.Y. Dec. 5, 2007) ("[A] party should not be able to alter its behavior or practices temporarily in order to evade judicial review or manipulate the jurisdiction of the courts."). Rather, "[t]he voluntary cessation of allegedly illegal activity may render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief of events have completely and irrevocably

12

eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)). Defendant has not met those requirements at this stage of the proceedings. Rather, this case therefore falls within the clear scope of "capable of repetition, yet evading review." Defendant would be free to return to its old ways once this litigation is done, and any threat averted, simply by announcing to the Court that it has reformed its wayward ways, avoiding a bad decision in the interim, and then returning to its bad habits.

Here, Defendant asserts that Plaintiff's claims are moot because the Website does not have any accessibility issues. However, when Plaintiff visited the Website multiple times prior to filing suit and encountered access barriers that Defendant has failed to rectify. These allegations must be accepted as true at this juncture and are sufficient to establish future injury. *See Tavarez*, 641 F. Supp. 3d at 82 ("reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *see also Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022); *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542, at *16 (S.D.N.Y. July 5, 2023).

This case thus bears no resemblance to those cases finding that an ADA website defendant had met its "formidable burden" of demonstrating mootness. *See, e.g.*, *Toro v. Medbar Corp.*, No. 23 Civ. 6878 (AS) (JLC), 2024 U.S. Dist. LEXIS 91815, at *3 (S.D.N.Y. May 22, 2024) (defendant submitted declaration from its general manager showing that it had "remedied all of the ADA violations identified by Toro in the amended complaint and contracted with a vendor . . . to ensure that the website remains complaint with the ADA and state law"); *Tavarez v. Extract Labs, Inc.*,

13

2023 U.S. Dist. LEXIS 55615, at *3 (S.D.N.Y. Mar. 30, 2023) (defendant submitted declarations from its Director of Marketing attesting, *inter alia*, that it had "completed a complete redesign of the website . . . to comply with WCAG 2.1," "resolved each of the identified [accessibility] issues" alleged by plaintiff, and paid for a subscription which "continually monitors WCAG developments" and "provides 24-hour automatic maintenance scans" to ensure there are no accessibility issues) (cleaned up); *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 U.S. Dist. LEXIS 238707, at *5-6 (S.D.N.Y. Dec. 18, 2020) (defendant submitted declaration from its Director of E-Commerce showing that "Defendant has since remedied each of the ADA violations alleged by Plaintiff" and "intends to commence a significant redesign of the Website, of which accessibility will be a central aspect") (cleaned up); *Diaz v. Kroger Co.,* No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177, at *3 (S.D.N.Y. June 4, 2019*)* (defendant submitted affidavit from its Group Product Design Manager showing, *inter alia*, that "the Website is today compliant with [the WCAG] standards," "the specific barriers to access identified [by plaintiff] have been remedied," and "Defendant commits to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible") (cleaned up).

Defendant's reliance on extrinsic evidence to establish mootness is unavailing at this stage of the litigation. As recently reaffirmed in *Fernandez v. Katie May, LLC*, "it is black-letter law that 'in determining a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and will therefore not consider . . . extrinsic evidence.'" The court in *Katie May* declined to consider a declaration asserting the website's accessibility, instead crediting the plaintiff's allegations that she encountered multiple access barriers when attempting to use the site. No. 24-CV-1592 (VEC), at *6–7 (S.D.N.Y. Mar. 20, 2025). This reasoning squarely applies here.

14

Moscot's proffer of post-suit testing and unverified assertions regarding accessibility cannot defeat Plaintiff's well-pleaded claims at the pleading stage. Defendant has not met—and cannot meet— the formidable burden necessary to moot this case through voluntary cessation.

## V.    **CONCLUSION**

Plaintiff has shown standing and established that Defendant has failed to prove mootness. As such, this Court should retain supplemental jurisdiction over Plaintiff's NYCHRL claims. For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.


Dated: May 15, 2025


Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/Rami Salim_____*
Rami Salim, Esq.
One University Plaza Drive, Suite 620
Hackensack, New Jersey 07601
Phone: 201-282-6500
Fax: 202-282-6501
rsalim@steinsakslegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2025, I electronically served the foregoing served this day on all counsel either via email or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Rami Salim*
Rami Salim, Esq.